**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

WILTECH TECHNOLOGY, INC., et al.,

      Plaintiffs,

v.                                  CV No. 20-975 MIS/CG

OSWALD WILSON, et al.,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on three sets of briefing: (1) Sheet Metal Products, Inc.'s *Amended Motion to Intervene* (the "Motion to Intervene"), (Doc. 46), filed August 25, 2021; Plaintiffs' *Memorandum in Opposition to Sheet Metal Products, Inc.'s Amended Motion to Intervene*, (Doc. 49), filed September 8, 2021, and its Supplement, (Doc. 57), filed October 8, 2021; Sheet Metal Product Inc.'s *Intervenor Movant's Reply to Response to Motion to Intervene*, (Doc. 52), filed September 20, 2021; and Sheet Metal Product Inc.'s *Notice of Completed Briefing on Motion to Intervene*, (Doc. 53), filed September 20, 2021.

(2) Plaintiffs' *Motion for Partial Summary Judgment and Entry of Order of Payment* (the "Partial Summary Judgment Motion"), (Doc. 47), filed August 31, 2021; Sheet Metal Product Inc.'s *Response to Motion for Partial Summary Judgment*, (Doc. 50), filed September 14, 2021; Defendant Oswald Wilson's *Opposition to Plaintiffs' Motion for Partial Summary Judgment*, (Doc. 54), filed September 24, 2021; and Plaintiffs' *Memorandum in Reply to Sheet Metal Products, Inc.'s Response to Plaintiffs'*

*Motion for Partial Summary Judgment*, (Doc. 55), filed September 28, 2021, and (Doc. 58), filed October 8, 2021.[1]

(3) Defendant Wiltech Energy LLC's *Notice of Motion and Motion to Vacate Entry of Non-Final Default Judgment* (the "Motion to Set Aside the Default Judgment"), (Doc. 51), filed September 17, 2021; Plaintiffs' *Memorandum in Opposition to Defendant Wiltech Energy LLC's Motion to Vacate Entry of Default Judgment*, (Doc. 56), filed October 1, 2021; and Defendant Wiltech Energy, LLC's *Memorandum in Reply to Plaintiffs' Response in Opposition to Defendant's Motion to Set Aside Default Judgment*, (Doc. 59), filed October 15, 2021.

On August 24, 2021, United States District Judge Kea W. Riggs referred this case to the undersigned to perform legal analysis and recommend an ultimate disposition, pursuant to 28 U.S.C. § 636(b). (Doc. 44). The Court, having considered the parties' briefing, the record, and the relevant law, **RECOMMENDS** that Sheet Metal Products, Inc.'s *Amended Motion to Intervene*, (Doc. 46), be **DENIED**, that Plaintiffs' *Motion for Partial Summary Judgment and Entry of Order of Payment*, (Doc. 47), be **DENIED**, and that Defendant Wiltech Energy LLC's *Notice of Motion and Motion to Vacate Entry of Non-Final Default Judgment*, (Doc. 51), be **DENIED**.

## I.    Factual & Procedural Background[2]

This lawsuit suit concerns a contractual dispute over a vertical solar energy system (the "energy system") installed and operated at the Los Lunas Recycling Center.

---

[1] Plaintiffs' two documents titled *Memorandum in Reply to Sheet Metal Products, Inc.'s Response to Plaintiffs' Motion for Partial Summary Judgment*, (Doc. 55) and (Doc. 58), appear to be identical except that the later-filed document contains fifteen additional pages of exhibits.

[2] For purposes of Plaintiffs' Partial Summary Judgment Motion, the Court will more fully set forth the disputed and undisputed factual allegations in the relevant section below.

(Doc. 1 at 4). The dispute currently involves Defendant Oswald Wilson, the purported inventor and owner of the energy system, and Plaintiff start-up companies, Wiltech Technology, Inc. ("Plaintiff Technology") and Wiltech Global Technology, Inc. ("Plaintiff Global"), (collectively "Plaintiffs"), for whom Mr. Wilson served as a director and the chief executive officer. *See* (Doc. 1 at 2-4); (Doc. 34 at 2).

In 2017, the Village of Los Lunas (the "Village") approved the parties' proposal to install the energy system, including an agreement that the parties would "install and operate the [energy] system for two years, and then after the two[-]year period, the Village would have the option to purchase the system." (Doc. 1 at 4); (Doc. 34 at 2). Indeed, following the two-year period, the Village purchased the system for $78,983.60, plus taxes and costs. *Id.*

The energy system was completed in June 2020. *Id.* That same month, the relationship between Mr. Wilson and Plaintiffs soured, leading to Mr. Wilson's separation from the two companies. *Id.* at 5. As a result of the parties' burgeoning dispute, namely the dispute over ownership of the energy system, the Village withheld its payment under the agreement. *Id.* at 6-7.

On September 23, 2020, Plaintiffs filed their Complaint against Mr. Wilson, his company, Defendant Wiltech Energy, LLC ("Defendant Wiltech Energy"), and the Village, in which they allege false designation of origin, unfair trade practices, breach of fiduciary duty, and tortious interference with contract. (Doc. 1 at 7-12). The Complaint also seeks a declaratory judgment that no contract exists between the Village and Mr. Wilson or Defendant Wiltech Energy, but rather that a contract exists between Plaintiffs and the Village "under which Plaintiff [Technology] is obligated to deliver a vertical

polygen solar power system, and The Village [] is obligated to pay Plaintiff [Technology] the amount of $78,983.60," plus taxes and costs "upon completion of the project." *Id.* at 11.

On February 19, 2021, the Village moved to deposit $89,265.85 into the Court registry as payment "for services rendered in construction of the [energy system] at the Los Lunas Recycling Center[,]" explaining that it had not previously rendered payment "due to [the instant] dispute." (Doc. 15 at 1). The Court granted the motion, pursuant to Federal Rule of Civil Procedure 67, and the Village was voluntarily dismissed from the case. *See* (Doc. 17); (Doc. 24); (Doc. 28).

On July 19, 2021, the Court granted default judgment against Defendant Wiltech Energy, but declined to award Plaintiffs the funds in the Court registry. (Doc. 37); *see also* (Doc. 32). Following that ruling, the instant motion practice ensued.

## II.   Sheet Metal Products' Motion to Intervene

The Court will first address SMP's Motion to Intervene, in which SMP seeks to intervene because it "shares with this action a common question of law or fact[,]" and it "claims an interest relating to the . . . funds placed in the [C]ourt's registry, that is the subject matter of this action." (Doc. 46 at 2). SMP explains that, pursuant to an agreement it had with Plaintiff Global, SMP fabricated, supplied, and installed components for the subject energy system from May 24, 2018, to June 9, 2020. *Id.* at 1. It contends that it is now owed $33,528.10, and that its "invoices remain unpaid." *Id.* at 2. SMP argues that its inability to intervene in this action would cause harm, because "Plaintiffs' [pending] summary judgment motion asks this Court to pay all the deposited

Village funds to Plaintiffs, without requiring Plaintiffs to pay the subcontractors[.]" (Doc. 52 at 2).

Plaintiffs oppose SMP's intervention in this action. Plaintiffs contend SMP had no contract with the Village of Los Lunas, and thus cannot have an interest in the monies the Village of Los Lunas deposited into the Court registry. (Doc. 49 at 5-6). Plaintiffs further argue that SMP had no contract with Plaintiff Global, despite SMP's allegation otherwise, and that the contract attached to SMP's proposed third-party complaint is fraudulent. *Id.* at 6-7. Plaintiffs explain that even if a valid contract existed between SMP and Plaintiff Global, SMP would still have no interest in the action because the Village of Los Lunas contracted not with Plaintiff Global but rather with Plaintiff Technology. *Id.* at 7. Finally, Plaintiffs suggest that, to the extent SMP has a contract claim against Plaintiffs, such a claim would more properly form a separate action. *Id.* at 8.

## A.    Intervention as of Right

The Federal Rules of Civil Procedure recognize two types of intervention: intervention as of right and permissive intervention. Under Rule 24(a), which addresses intervention as of right, the court must permit an intervenor to intervene in an action if they establish "(1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cty., Utah v. United States*, 928 F.3d 877, 889 (10th Cir. 2019) (internal citation omitted); *see also* FED. R. CIV. P. 24(a)(2).

The court assesses the timeliness of a motion to intervene "in light of all the circumstances, including the length of time since the [intervenor] knew of [their] interest in the case, prejudice to the existing parties, prejudice to the [intervenor], and the

existence of any unusual circumstances." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (internal quotation marks omitted). A motion is not untimely simply because of the "mere passage of time . . . rather, the important question concerns actual proceedings of substance on the merits." *American Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 245 (D.N.M. 2008) (quoting 6 Moore's Federal Practice § 24.21[1], at 83–84 (3d ed.2008)).

With regard to the three remaining requirements, an intervenor must specify a "particularized interest [relating to the subject property or transaction] rather than a generalized grievance." *Herrera*, 257 F.R.D. at 246 (quoting *Chiles v. Thornburgh,* 865 F.2d 1197, 1212 (11th Cir.1989)). That interest must be "direct, substantial, and legally protectable." *Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior,* 100 F.3d 837, 840 (10th Cir. 1996). Determining the sufficiency of an intervenor's interest "is highly fact-specific[,]" *American Ass'n of People with Disabilities*, 257 F.R.D. at 246, but the Tenth Circuit "has tended to follow a somewhat liberal line in allowing intervention[,]" *Coalition of Ariz./N.M. Counties for Stable Economic Growth,* 100 F.3d at 841. The interest determination is "'primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Utahns for Better Transp. v. U.S. Dep't of Transp.,* 295 F.3d 1111, 1115 (10th Cir. 2002) (citations omitted).

Here, although Plaintiffs do not challenge the timeliness of SMP's Motion to Intervene, SMP nevertheless bears the burden of demonstrating timeliness. *See Coalition of Ariz./N.M. Counties for Stable Economic Growth,* 100 F.3d at 840 (stating that, for a party to intervene as a matter of right, the party must demonstrate that the

6

motion to intervene is timely). This case has been pending for approximately one year, but the Court has not yet entered a discovery schedule in the matter, nor has it set a trial. Moreover, Plaintiffs do not argue that it would be prejudiced by SMP's delay in filing the Motion to Intervene, and the Court can find no obvious prejudice. *See Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1236 (10th Cir. 2010) (stating that in analyzing the second factor, the court must decide if the delay in filing the motion to intervene, "not the mere fact of intervention," will prejudice the existing parties). Thus, the Court finds that, in view of the circumstances, SMP's Motion to Intervene is timely.

Turning to the remaining requirements, SMP contends it has two legally protectable interests relating to the Court registry funds: (1) to prevent the disposal of the funds, which SMP contends must be used to pay the $33,528.10 it is owed for components it provided; and (2) to enforce its breach of contract and unjust enrichment claims against Plaintiffs and Defendants, which would then entitle SMP to the monies it is owed. (Doc. 46 at 2); *see also* (Doc. 46 at 2-3). Neither of these interests, however, is directly or substantially related to the dispute between Plaintiffs and Defendants over the Court registry funds. *See Coalition of Ariz./N.M. Counties for Stable Economic Growth,* 100 F.3d at 840 (requiring the interest to be "direct, substantial, and legally protectable[]").

First, the Court registry funds constitute the money the Village owes to either Plaintiffs or Defendants for the energy system, pursuant to an agreement, not money Plaintiffs allegedly owe SMP for component parts. *See* (Doc. 15 at 1); (Doc. 1 at 11). In

other words, SMP makes no claim to have contracted with the Village regarding the energy system.

Second, and relatedly, SMP's interest in or entitlement to the Court registry funds would necessarily depend on several occurrences: (1) that SMP have a legally enforceable contract against Plaintiffs, which Plaintiffs have breached; (2) that Plaintiffs prevail in the instant action and are awarded the Court registry funds; and (3) that the Court registry funds constitute Plaintiffs' only pool of funds with which to satisfy any judgment SMP may obtain against them. Not only is this scenario too speculative and attenuated, SMP does not allege that the Court registry funds are the only pool of funds available to Plaintiffs to pay SMP. *See*, *e.g.*, *XTO Energy, Inc. v. ATD, LLC*, 1:14-cv-1021 JB/SCY, 2016 WL 3148399 (D.N.M. April 18, 2016) (denying intervention as of right because intervenor failed to show that insurance proceeds were the only pool of money available to satisfy a judgment); *cf.*, *e.g.*, *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377 (7th Cir. 1995) (permitting a contractual third-party to intervene in declaratory judgment action when the subject insurance policy provided the intervenor's only avenue to recovery).

A similar case, *Davis v. St. Anselm Exploration Co.*, 1:10-cv-883 JEC/WPL, 2011 WL 13085929 (D.N.M. Oct. 3, 2011), is instructive. There, the plaintiff sued to recover monies owed pursuant to two promissory notes. *Id.* at *1. A creditor of the defendant moved to intervene in the action, asserting they would suffer economic harm if the defendant paid plaintiff ahead of them and other creditors. *Id.* The Court denied intervention, explaining that "creditors of a party to an action do not have a right to intervene merely because they may have an indirect interest in the outcome of the

8

action." *Id.* at 4. The Court found, in particular, that the prospective intervenor had failed to show the defendant's alleged insolvency, to the extent it was insolvent, would prevent the prospective intervenor from still asserting its claims in a separate action. *Id.* at 3.

Likewise, here, the outcome of this lawsuit would not prevent SMP from asserting its contract claims in a separate action and seeking to recover the monies it alleges Plaintiffs owe for parts provided in the installation and operation of the energy system. The Court therefore finds that SMP has not shown an entitlement to intervene in this action a as a matter of right.

### B. Permissive Intervention

Under Rule 24(b), which addresses permissive intervention, the court may permit anyone to intervene in an action who "(1) is given a conditional right to intervene by a federal statute; or (2) has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(A)-(B). "To permissively intervene, a party need not have a direct personal or pecuniary interest in the subject of the litigation." *San Juan County, Utah v. United States,* 503 F.3d 1163, 1207 (10th Cir.2007) (en banc).

Permissive intervention lies in the court's sound discretion, and the appellate court will not disturb the district court's exercise of that discretion absent clear abuse. *See United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir.1990). But, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

Here, SMP fails to demonstrate that the Court should permit permissive intervention. First, SMP points to no federal statute that grants it a conditional right to intervene. Second, the claims and defenses asserted by SMP in its proposed third-party complaint have little to no questions of law and fact in common with the claims asserted in Plaintiffs' complaint or the claims and defenses asserted in Mr. Wilson's answer.

In particular, SMP alleges that Plaintiff Global breached its contract to pay SMP for parts SMP was to provide for the energy system, and that Plaintiffs and Defendants were unjustly enriched by the parts SMP provided. (Doc. 46-1 at 2). The existence of a contract between SMP and Plaintiff Global, and Plaintiff Global's alleged failure to perform on the contract, is not relevant to the central issue in the instant case of whether the Village agreed to pay Plaintiffs or Defendants for the energy system.

SMP's purported contract with Plaintiff Global is also not relevant to the specific claims alleged in the complaint that Mr. Wilson interfered with the contract between Plaintiffs and the Village, that Mr. Wilson breached his fiduciary duties to the two Plaintiff companies, that Mr. Wilson falsely designated himself the creator of the energy system, or that Mr. Wilson made false representations about his involvement with the energy system.

The Court further notes that allowing intervention here would alter the existing parties' claims and defenses, which would increase the amount of any discovery and delay resolution of this case. *See*, *e.g.*, *Reyes v. Arias*, 2:19-cv-601 KG/KRS, 2019 WL 6219271, at *2-3 (D.N.M. Nov. 21, 2019) (denying permissive intervention, despite common questions of law and fact, because intervention would triple the number of plaintiffs in the case, require the appointment of two additional guardians *ad litem*,

significantly alter the parties' claims and defenses, and require protracted discovery). The additional issues raised by SMP are not necessary to resolve the original claims in this case.

For these reasons, as well as many of the reasons discussed above, the Court finds that permissive intervention by SMP is not appropriate. The Court will therefore **RECOMMEND** that SMP's Motion to Intervene be **DENIED**.

### III.   Plaintiffs' Partial Summary Judgment Motion

Next, Plaintiffs ask the Court to enter partial summary judgment against Mr. Wilson and to order payment of the Court registry funds, because "there are no further material issues of fact in dispute as to which entity is owed those monies." (Doc. 47 at 2). Plaintiffs explain that the Village does not dispute that it owes payment for the installation and operation of the subject energy system, and that, "[i]n his Answer and subsequent filings," Mr. Wilson did not claim he was owed any payment and he denied the existence of a contract with any parties to this case. *Id.* at 6.

Mr. Wilson contends there are disputed issues of material fact as to each count in Plaintiffs' complaint, including who is owed the Court registry funds. (Doc. 54 at 4-7). With regard to the agreement with the Village, Mr. Wilson alleges that it was his proposal that the Village approved in July 2017, and that Plaintiff companies could not have formed an agreement with the Village because they were not even formed until later that year. *Id.* at 6. Despite alleging that it was he, and not Plaintiff companies, who contracted with the Village, Mr. Wilson stops short of alleging that he is owed the Court registry monies. Instead, he argues that the monies are owed to the six "third[-]party vendors [who] provided labor, materials, and services" for the energy system. *Id.* at 6-7.

SMP filed its own opposition to Plaintiffs' Partial Summary Judgment Motion, in which SMP argues that it is entitled to a portion of the Court registry funds because it had a contract with Plaintiffs and, as a result, it had a subcontract with the Village of Los Lunas. (Doc. 50 at 3-5). Plaintiffs replied only to SMP's response. *See* (Doc. 58). Plaintiffs argue that SMP has no interest, contractual or otherwise, in the Court registry funds—the subject of the Partial Summary Judgment Motion—and that SMP makes no "legal claims, or seeks any judgment, against the Village" in their proposed third-party complaint. *Id.* at 2. Plaintiffs also "note that SMP admits that it does not contest Plaintiffs['] statements of fact" in the Partial Summary Judgment Motion. *Id.* Because the Court found above that SMP should not be permitted to intervene in this action, the Court will not consider SMP's response to the Partial Summary Judgment Motion.

A.   **Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the lawsuit. *Smothers v. Solvay Chems.*, *Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (citation omitted). A dispute over a material fact is "genuine" if the evidence presented could allow a rational jury to find in favor of the non-moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (internal citation omitted). "Genuine factual issues must exist that 'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Harapat v. Vigil*, 676 F. Supp. 2d 1250, 1258-59 (D.N.M. Oct. 13, 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "The standard is no different where, as here, the movant seeks

summary judgment only as to some of the issues in dispute." *Garcia v. Crossmark*, 157 F. Supp. 3d 1046, 1048 (D.N.M. 2015) (citing *Doshay v. Global Credit Collection Corp.*, 796 F. Supp. 2d 1301, 1303 (D. Colo. 2011) ("A motion for partial summary judgment is resolved under the same standard as a motion for summary judgment.")).

A party seeking summary judgment bears the initial burden of showing there is no genuine dispute as to any material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Nowell v. Medtronic, Inc.*, 372 F. Supp. 3d 1166, 1214 (D.N.M. 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (Brennan, J., dissenting)).

If the party seeking summary judgment satisfies its burden, the burden then shifts to the nonmovant. *Id.* The nonmovant cannot rest on the pleadings but must "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citation omitted). Specifically, the nonmovant must identify facts from which a rational trier of fact could find in the nonmovant's favor, utilizing evidence such as affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671. The party cannot rest on ignorance of the facts, speculation, or unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003).

Under Federal Rule of Civil Procedure 56(c), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular

parts of materials in the record, including depositions, documents, electronically-stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

"The mere existence of a scintilla of evidence will not avoid summary judgment." *Harapat*, 676 F. Supp. 2d at 1259 (citing *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993)). If the evidence in favor of the nonmovant "is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* (quoting *Anderson*, 477 U.S. at 249). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008) (citing FED. R. CIV. P. 56(e)). The court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in their favor. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).

### B.   Material Facts

In their Partial Summary Judgment Motion, Plaintiffs set forth seventeen paragraphs of what they title "Material Facts," in accordance with D.N.M.LR-Civ. 56.1(b). (Doc. 47 at 2-5). Mr. Wilson responds with nine paragraphs of what he titles

"Contested Material Facts," also in accordance with D.N.M.LR-Civ. 56.1(b). (Doc. 54 at 2-3). The following facts are drawn from Plaintiffs' Material Facts and Mr. Wilson's Contested Material Facts. All facts recited in Plaintiffs' Material Facts which Mr. Wilson did not specifically controvert are deemed uncontested. *See U.S. v. 16 Mounts, Rugs and Horns Protected by the Endangered Species Act*, 124 F. Supp. 3d 1174, 1176 (D.N.M. 2015) ("[B]ecause [the nonmoving party] has not contested any of the facts in the government's brief, the Court will assume each of these facts to be true for the purposes of resolving this Motion.") (internal citation omitted); *see also* D.N.M.LR-Civ. 56.1(b) ("All material fact set forth in [the movant's] Memorandum will be deemed undisputed unless specifically controverted.").

### i.   *Uncontested Material Facts*

Plaintiff Technology, a New Mexico corporation formed in 2017, is a solar energy technology company established to develop and install renewable energy systems and related components. (Doc. 47 at 2, ¶¶ 1-2 (citing Doc. 47-1 at ¶¶ 2-3 (the Affidavit of Lawrence N. Cooper)). These components include the vertical integrated solar power energy system, which generates solar energy more efficiently than conventional, horizontally installed solar panels. *Id.* At the time of the formation of both Plaintiff Technology and Plaintiff Global, and during all relevant times, Mr. Wilson was serving as a director and chief executive officer of both Plaintiff companies. *Id.* at ¶ 2 (citing Doc. 47-1 at ¶ 3); *id.* at 3, ¶ 10 (citing Doc. 47-1 at ¶ 11).

In July 2017, the Village voted to approve a proposal for the installation and operation of the subject energy system at the Los Lunas Recycling Center. *Id.* at 2, ¶ 3 (citing Doc. 47-1 at ¶ 4). Under the proposal, the energy system would be installed and

operated for two years, and following that two-year period, the Village would then have the option to purchase the system. *Id.* On or about August 15, 2019, the Village agreed to purchase the energy system for $78,983.60, plus shipping costs and New Mexico Gross Receipts Tax, payable upon completion of the project. *Id.* at 3, ¶ 4 (citing Doc. 47-1 at ¶ 5). The final phases of the energy system's installation took place between January 2020 and June 2020. *Id.* at ¶ 5 (citing Doc. 47-1 at ¶ 6).

On or about June 24, 2020, Plaintiffs learned that, in March 2020, Mr. Wilson had formed a new limited liability company in New Mexico under the name Wiltech Energy, LLC. *Id.* at ¶¶ 6, 8 (citing Doc. 47-1 at ¶¶ 7, 9). At the time that Mr. Wilson formed Defendant Wiltech Energy, LLC, he was still serving as a director and the CEO of Plaintiff companies. *Id.* at ¶ 9 (citing Doc. 47-1 at ¶ 10). Shortly after Plaintiffs discovered this information, Mr. Wilson ceased all communication with Plaintiffs. *Id.* at ¶ 7 (citing Doc. 47-1 at ¶ 8).

Meanwhile, Mr. Wilson began promoting Defendant Wiltech Energy, LLC as the builder and creator of the subject energy system at. *Id.* at ¶ 8 (citing Doc. 47-1 at ¶ 9). On or before June 24, 2020, the business economic development manager for the Village solicited Defendant Wiltech Energy, LLC for business, via email, referencing Mr. Wilson and Defendant Wiltech Energy, LLC as the owners of the energy system. *Id.* at 4, ¶ 11 (citing Doc. 47-1 at ¶ 12). Plaintiffs thus removed Mr. Wilson as an officer and director of Plaintiff Technology on July 20, 2020. *Id.* at ¶ 10 (citing Doc. 47-1 at ¶ 11).

As a result of the parties' dispute, the Village indicated it would not make payment under the purchase agreement because it did not know whether Plaintiff Technology or Mr. Wilson and Defendant Wiltech Energy were the "legally-correct

16

parties to be paid." *Id.* at ¶ 12 (citing Doc. 47-1 at ¶ 13). The remainder of Plaintiffs'

uncontested material facts discuss the procedural history of this case. *See id.* at 4-5, ¶¶

14-19.

> ii.    <u>Contested Material Facts</u>

First, the parties dispute who made the proposal to the Village in 2017 and, thus,

whose proposal the Village approved later that summer, including the option to

purchase[3] the energy system which the Village exercised in 2019. Plaintiffs allege that

Plaintiff Technology submitted the proposal, under which Plaintiff Technology would

install and operate the energy system at the Recycling Center for two years, and

thereafter the Village would have the option to purchase the system from Plaintiffs.

(Doc. 47 at 3, ¶ 2 (citing Doc. 47-1 at ¶ 4)).

Mr. Wilson paints a different picture. He alleges that, in February 2017, the

Village invited him, through his company Defendant Wiltech Energy, to present the

energy system to the Los Lunas City Council, because "they were interested in

renewable energy to power a recycling facility." (Doc. 54 at 2, ¶¶ 3-4 (citing Doc. 54-1 at

¶¶ 10-11 (the Declaration of Oswald Wilson)). He alleges that, in July 2017, the Village

invited him to present the energy system a second time. *Id.* at ¶ 4 (citing Doc. 54-1 at ¶

11). After the second presentation, the Village "enter[ed] into an agreement for Wilson

to install the Energy System at the Los Lunas recycling center." *Id.* at ¶ 5 (citing Doc. 34

at ¶ 2 (July 1, 2021 Letter from Defendant Oswald Wilson to the Court)). Mr. Wilson

alleges that Plaintiff companies neither had nor could have any involvement in the 2017

---

[3] The Court uses the term "purchase option" here only as shorthand for the language in the
proposal that the Village would have the option to purchase the energy system after a two-year
period, rather than as a legal term of art.

proposal, because they were not formed until August 25, 2017, and September 27, 2017, respectively—dates occurring after the Village approved the proposal. *Id.* at 3, ¶¶ 7-8 (citing Doc. 54-1 at ¶¶ 16-17); *see also* Doc. Doc. 54-1 at ¶ 15.

The parties allege fewer facts around the purchase option and the Village's decision in 2019 to exercise the option. Plaintiffs state that on or about August 15, 2019, the Village agreed to purchase the system outright for the flat cost of $78,983.60, plus tax and costs, payable upon completion of the energy system. (Doc. 47 at 3, ¶ 4 (citing Doc. 47-1 at ¶ 5)). Mr. Wilson does not dispute this allegation, but instead contends that the 2017 agreement was "[t]he only agreement or contract with [the Village,]" which the Court reads as an allegation that the purchase option was not a separate agreement in 2019 but was a term of the 2017 agreement. (Doc. 54-1 at 3, ¶ 15); *see Shero*, 510 F.3d at 1200 (The court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in their favor).

Next, the parties dispute who installed and operated the energy system at the Recycling Center between 2017 and 2020. Plaintiffs allege that Plaintiff Technology installed and operated the system during this period. (Doc. 47 at 2-3, ¶¶ 3, 5 (citing Doc. 47-1 at ¶¶ 4, 6)). Mr. Wilson alleges that the energy system was installed and operated by Wilteg Technologies, Inc., yet another company he formed in 2017. (Doc. 54 at 3, ¶ 6 (citing Doc. 54-1 at ¶ 12)). Mr. Wilson contends that Plaintiffs were involved only in soliciting investments from third parties in order to finance the installation and operation of the energy system. *Id.* at 3, ¶¶ 7-9 (citing Doc. 54-1 at ¶¶ 16-18)).

Finally, the parties dispute whether Plaintiffs have received any payment in connection with the installation, operation, and ultimate sale of the energy system.

Plaintiffs allege that they have "[n]ever received any payment from the Village [of Los Lunas] (or any other source) for the sale of the solar energy system, at any time." (Doc. 47 at 4, ¶ 13 (citing Doc. 47-1 at ¶ 14)). Mr. Wilson alleges that he "transferred $89,000.00 to [Plaintiff Global] on Aug[ust] 30, 2017, in order to finance the project." (Doc. 54 at 3, ¶ 9 (citing Doc. 54-1 at ¶ 18)).

**C.   Analysis**

Plaintiffs do not explicitly identify the count or counts in the Complaint for which they seek summary judgment. However, given the designation by Plaintiffs of their Motion as one for only partial summary judgment, as well as the parties' arguments over only the Court registry funds, the Court will consider only Count V of the Complaint: Declaratory Judgment. *See* (Doc. 1 at 11). In Count V, Plaintiffs ask the Court to declare, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, that

> (a) A contract exists between The Village of Los Lunas and Plaintiff [Technology] under which Plaintiff [Technology] is obligated to deliver a vertical polygen solar power system, and The Village of Los Lunas is obligated to pay to Plaintiff [Technology] the amount of $78,983.60, plus shipping costs and New Mexico Gross Receipts Tax, upon completion of the project.
>
> (b) No contract exists between The Village of Los Lunas and either Defendant Oswald Wilson or Defendant [Wiltech Energy, LLC] under which either is obligated to deliver a vertical polygen solar power system.
>
> (c) The Village of Los Lunas, New Mexico has no obligation to pay any monies to Defendant Oswald Wilson, or Defendant {Wiltech Energy, LLC] for the delivery of any vertical polygen solar power system.

*Id.* at 11-12. Thus, the issue the Court will consider here is whether Plaintiffs have established, with credible evidence, that there is no genuine dispute that the Village of

Los Lunas contracted with Plaintiffs, not Defendants, for the purchase of the energy

system. *See Adler*, 144 F. 3d 670-71; *Nowell*, 372 F. Supp. 3d at 1214.

The Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, provides in

relevant part that "[i]n a case of actual controversy within its jurisdiction . . . any court of

the United States, upon the filing of an appropriate pleading, may declare the rights and

other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought." In New Mexico, the existence of a contract "must be

factually supported by an offer, an acceptance, consideration, and mutual assent."

*Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 9, 121 N.M. 728,

731, 918 P.2d 7, 10 (1996) (internal quotations and citations omitted).

Here, several problems prevent the Court from finding that no genuine dispute

exists over the subject contract. First, Plaintiffs fail to proffer sufficient evidence

supporting their allegation that Plaintiff Technology made the offer in 2017 to the

Village. Plaintiffs rely on the Affidavit of Lawrence N. Cooper, which of itself is valid and

credible evidence but is credibly challenged by the competing Declaration of Oswald

Wilson. The Court cannot resolve these competing affidavits without making a credibility

determination, which the Court cannot do at the summary judgment stage. *Philmar*

*Dairy, LLC v. Armstrong Farms*, 2:18-cv-530 SMV/KRS, 2019 WL 355285, at *4 (D.N.M.

Jan. 29, 2019) ("[T]he Court cannot resolve [Defendant's] and [Plaintiffs'] competing

affidavits at the summary judgment stage without making a credibility determination,

which the Court cannot do at this stage of the proceedings.") (citing *Nat'l Aviation*

*Underwriters, Inc. v. Altus Flying Serv., Inc.*, 555 F.2d 778, 784 (10th Cir. 1977)

("Affidavits are not a substitute for trial and summary judgment is improper where an issue turns on credibility…")).

With the affidavits essentially cancelling each other out, Plaintiffs offer no other evidence to support their allegation that Plaintiff Technology made the offer to the Village, which ultimately led to the purchase of the energy system.[4] Most glaringly, Plaintiffs do not offer, for instance, the proposal itself. Even to the extent that the proposal was made orally, Plaintiffs do not offer any written evidence of that, such as email correspondence.

In fact, Mr. Wilson is the only party to this case who has presented any potential evidence, beyond the competing affidavits, with regard to the subject offer. He filed on the docket, a news article from the Valencia County News-Bulletin, dated July 19, 2017, and titled "Los Lunas to use new solar technology at recycling center," in which the Village's public works director is quoted, saying that Wiltech Energy Group "came to [the Village of Los Lunas] with their product[.]" (Doc. 34 at 23). Mr. Wilson also filed email correspondence dated May 16, 2018, between himself and several employees of the Village, including the public works director, discussing "the foundation of the Polygen Pole." (Doc. 33 at 12). And finally, Mr. Wilson filed on the docket a letter addressed to himself, dated August 15, 2019, from the Village's public works director, stating that "we agree to purchase the remaining system out right. No term contracts

---

[4] The *Order Adopting the Proposed Findings and Recommended Disposition*, (Doc. 37), filed on July 19, 2021, draws a distinction between the 2019 purchase agreement and the 2017 proposal, stating that Mr. Wilson "fail[ed] to address the 2019 purchase agreement" in the letters he filed after the undersigned recommended default judgment, "instead addressing the 2017 proposal[]." *Id.* at 2. The undersigned does not read this language, as Plaintiffs suggest in their briefing, to be a conclusion by the Court that the two agreements were necessarily separate. *See* (Doc. 56 at 7).

just pay Weltech [sic] a flat cost of $78,983.60 in addition to shipping and New Mexico Gross Receipts Tax." (Doc. 34 at 29).

Moreover, the parties have left the Court unclear about the nature of the contract itself—i.e., whether the contract was fully formed in 2017 or in 2019, and whether the contract contained a purchase option or the purchase option was in fact a separate contract.[5] If, for instance, as the evidence thus far suggests, the proposal made in July 2017 was an offer to not only install and operate the energy system but also to purchase it two years later, then there is a strong argument that Plaintiffs could not have possibly made that offer because they had not yet been formed. If, however, the July 2017 proposal was merely an offer to install and operate the energy system at the Recycling Center, and a second and separate offer was made in 2019 for the purchase of the system, then Plaintiffs could have made the hypothetical offer that led to the purchase of the energy system. However, given the facts and legal arguments currently before the Court, the Court cannot make that determination.

For these reasons, Plaintiffs have failed to show that no genuine issue exists as to Count V of the Complaint: that the Village of Los Lunas contracted with Plaintiffs, and not Defendants, for the purchase of the energy system. The Court will therefore **RECOMMEND** that Plaintiffs' Partial Summary Judgment Motion be **DENIED**.

---

[5] "Defined at its most basic level, an option is simply a contract to keep an offer open." *Garcia v. Sonoma Ranch East II, LLC*, 2013-NMCA-042, ¶ 14, 298 P.3d 510 (internal citation omitted). "An option contract is unilateral in its character [because] [i]t is an irrevocable offer on the part of the optionor, which the optionee has the right to exercise in accordance with the terms of the option." *Id.* (internal citations omitted). "When the option is exercised, the contract becomes bilateral and binds both parties and is enforceable at the instant of either party." *See Master Builders, Inc. v. Cabbell*, 1980-NMCA-178, ¶ 30, 95 N.M. 371, (Sutin, J., concurring). The failure to exercise an option results in the loss of the option. *Id.* ¶ 13.

**IV.     Defendant Wiltech Energy, LLC's Motion to Set Aside Default Judgment**

Finally, Defendant Wiltech Energy asks the Court to set aside the default judgment that the Court entered against it on July 19, 2021. (Doc. 51 at 1); *see also* (Doc. 37). Defendant Wiltech Energy urges the Court to consider the Motion under the more lenient standard set forth in Rule 55 of the Federal Rules of Civil Procedure, rather than Rule 60. *Id.* at 3-4. Defendant Wiltech Energy argues, under Rule 55, that its conduct in failing to answer the Complaint was not culpable, that it has meritorious defenses, and that Plaintiffs will not be prejudiced if the default judgment is set aside. *Id.* at 5-8. Plaintiffs oppose the Motion to Set Aside the Default Judgment, contending Defendant Wiltech Energy has no meritorious defenses and that its conduct in failing to answer the Complaint was indeed culpable. (Doc. 56 at 1-14).

**A.     Whether FED. R. CIV. P. 55(c) or 60(b) Applies**

The court may set aside a default judgment under Federal Rule of Civil Procedure 55(c) or 60(b). FED. R. CIV. P. 55(C). "[T]he good cause required by Fed. R. Civ. P. 55(c) for setting aside . . . default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009) (internal citation and quotation omitted).

An order granting default judgment on liability without any determination on the issue of damages or relief otherwise is an interlocutory order to which Rule 60(b) does not apply. *Christensen v. Fin. Credit Serv., Inc.*, 1:15-cv-134 KG/LF, 2016 WL 9819536, at *2 (D.N.M. Aug. 10, 2016) ("Default Judgment on Liability is not a final default judgment, because damages have yet to be finally determined. Hence, the Default

Judgment on Liability is subject to the 'good cause' standard articulated in Fed. R. Civ. P. 55(c) for deciding whether to set aside an entry of default."); *see also Tilga v. United States*, 1:14-cv-256 JAP/RHS, 2015 WL 13667048, at *3 (D.N.M. Jan. 2, 2015) ("Rule 55(c) provides that a court may set aside an entry of default for 'good cause.' Because the Default Judgment did not contain certification language in accordance with Rule 54(b), it was not a final judgment. Thus, Rule 60(b) is not implicated.").

In this case, the Court entered an order granting Plaintiffs a default judgment against Defendant Wiltech Energy. (Doc. 37 at 3); *see also* (Doc. 32 at 16). In particular, in the *Proposed Findings and Recommended Disposition* (the "PF&RD"), which the presiding judge adopted, the Court determined that the facts as alleged in Plaintiffs' Complaint stated a claim for relief on each of the five counts. (Doc. 32 at 9-15). However, the Court did not award Plaintiffs the $89,265.85 in the Court registry, because Mr. Wilson remained in the case and because the Plaintiffs had not shown an entitlement to those funds. *Id.* at 15-16.

Given the Court's refusal to award damages when it granted default judgment, the Court's order was interlocutory. *See*, *e.g.*, *Roberson v. Farkas*, 1:9-cv-795 JCH/WDS, 2011 WL 13117113, at *3 (D.N.M. Sept. 30, 2011) (finding "order of default judgment on liability prior to a determination of damages" to be "an interlocutory order . . . subject to revision based on an analysis using the standards of Rule 55(c)"). As such, the Court will analyze the Motion to Set Aside the Default Judgment under Rule 55(c).

## B.     Set Aside Standard Under Fᴇᴅ. R. Cɪᴠ. P. 55(c)

Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside a[] . . . default [judgment] for good cause[.]" The standard for setting aside a default judgement

under Rule 55(c) is relatively liberal because "[t]he preferred disposition of any case is upon its merits and not by default judgment." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970). "[T]his judicial preference is counterbalanced by considerations of social goals, justice, and expediency." *Id.* Generally, courts consider the following factors: (1) whether the party willfully defaulted; (2) whether setting aside the entry of default or default judgment would prejudice the nonmovant; and (3) whether the movant has presented a meritorious defense. *See Pinson*, 316 F. App'x at 750.

### C.   <u>Analysis</u>

Here, with regard to the willful default factor, Defendant Wiltech Energy contends that it its failure to answer the Complaint was not culpable, but rather was because Mr. Wilson, the company's "principal," was "unable to retain counsel and legal[ly] inexperience[d]." (Doc. 51 at 6). The Court has been aware throughout this litigation that Mr. Wilson was proceeding *pro se*. For that reason, the Court gave Mr. Wilson considerably more time to answer the Complaint—almost sixty days—than the rules permit. *See* FED. R. CIV. P. 12(a)(i) (requiring defendant to serve an answer within twenty-one days after service of summons and complaint); *see also* (Doc. 32 at 4). When Mr. Wilson requested even more time for Defendant Wiltech Energy to retain counsel and file an answer, although the Court denied the request procedurally, the Court nevertheless delayed its ultimate decision to default Defendant Wiltech Energy for an *additional* three months. *See* (Doc. 32); *see also* (Doc. 21).

Meanwhile, as Defendant Wiltech Energy admits, Mr. Wilson remained otherwise active in this case, filing letters on the docket, (Doc. 33); (Doc. 34); (Doc. 35); (Doc. 40), and attending the Court's Telephonic Status Conference on August 2, 2021, (Doc. 41).

As such, his decision to not refile his motion to extend the time for Defendant Wiltech Energy to answer, coupled with his decisions to not respond to Plaintiffs' default judgment motion, (Doc. 23), and to not object substantively to the Court's PF&RD recommending default judgment, left the Court with the impression that he was consciously choosing for Defendant Wiltech Energy not to defend this case. *See Lucero as Next Friend to Lucero v. City of Clovis Police Dep't*, 2:19-cv-445 KWR/KRS, 2021 WL 2525644, at *4 (D.N.M. June 21, 2021) ("[C]ourts require parties seeking to set aside a default judgment to make a showing of diligence and conscientiousness in their participation in the case[.]") (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

The Court finds Defendant Wiltech Energy's conduct to be culpable. *See Hunt v. Ford Motor Co.*, 65 F.3d 178 (Table), 1995 WL 523646, at *3 (10th Cir. 1995) (unpublished) ("If the default was the result of the defendant's culpable conduct, the district court may refuse to set aside the default on that basis alone."). The Court therefore finds that the willful default factor weighs against setting aside the default judgment.

Next, with regard to the prejudice factor, Defendant Wiltech Energy argues Plaintiffs will not suffer prejudice if the default judgment is set aside because "discovery has not yet begun and the parties have not yet met with the Magistrate Judge to discuss pretrial deadlines." (Doc. 51 at 6). While this is true, it fails to address the other ways in which Plaintiffs could suffer prejudice if the default judgment is set aside.

Although the Court has not yet set a discovery schedule, much litigation has transpired. Defendant Wiltech Energy's Motion comes three months after the

undersigned recommended granting default judgment and two months after the then-presiding judge adopted that recommendation. *Cf.*, *e.g.*, *Rivers v. Younger*, 1:16-cv-555 KG/WPL, 2017 WL 3588799, at *3 (D.N.M. March 2, 2017) (finding no prejudice where "Defendants filed the Motion to Set Aside the same day the Clerk entered the defaults"); *NMSURF, Inc. v. New Mexico Dep't of Transportation*, 2021 WL 1873457, at *2 (finding no prejudice where entry of default was requested only one day after defendant's answer was due). In that time, Plaintiffs have filed the instant Partial Summary Judgment Motion and briefed both the Motion to Intervene and the Motion to Set Aside the Default Judgment. Moreover, this case is now over a year old.

Given the age of this case, as well as the motion practice engaged in by Plaintiffs throughout, the Court finds that Plaintiffs would likely suffer prejudice in the way of added litigation expenses if the default judgment were set aside. *See United States for use and benefit of Summit Electric Supply Co., Inc. v. Altuiiq Int't Solutions, LLC*, 1:10-cv-811 JEC/RHS, 2012 WL 13081274, at *4 (D.N.M. May 25, 2012) (denying motion to set aside default judgment where nonmovant would suffer "prejudice . . . in the form of expenses and lost witnesses").

Therefore, even assuming for argument's sake that Defendant Wiltech Energy has meritorious defenses, the Court finds that the two other factors weigh against setting aside the default judgment. Most especially, the Court finds that Defendant Wiltech Energy has engaged in culpable conduct by not previously answering the Complaint and asserting its defenses. *See Hunt*, 1995 WL 523646, at *3 ("If the default was the result of the defendant's culpable conduct, the district court may refuse to set

aside the default on that basis alone."). As such, the Court will **RECOMMEND** that

Defendant Wiltech Energy's Motion to Set Aside the Default Judgment be **DENIED**.

## V.     Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Sheet Metal Products,

Inc.'s *Amended Motion to Intervene*, (Doc. 46), be **DENIED**, that Plaintiffs' *Motion for*

*Partial Summary Judgment and Entry of Order of Payment*, (Doc. 47), be **DENIED**, and

that Defendant Wiltech Energy LLC's *Notice of Motion and Motion to Vacate Entry of*

*Non-Final Default Judgment*, (Doc. 51), be **DENIED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a
copy of these Proposed Findings and Recommended Disposition they may file written
objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A
party must file any objections with the Clerk of the District Court within the
fourteen-day period if that party wants to have appellate review of the proposed
findings and recommended disposition.  If no objections are filed, no appellate
review will be allowed.**

---

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE