IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILTECH TECHNOLOGY, INC., and
WILTECH GLOBAL TECHNOLOGY, INC.,

    Plaintiffs,

v.                                                                              Case No. 1:20-cv-00975-MLG-JHR

OSWALD WILSON,
WILTECH ENERGY, LLC, and
THE VILLAGE OF LOS LUNAS,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S
SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

Oswald Wilson is an inventor. He developed an innovative type of solar energy system ("energy system")[1] to which he holds the patent and at least one related trademark. Doc. 54-2 (patent awarded in 2015); Doc. 54-3 (one trademark registered in 2015; another published in the Trademark Official Gazette in 2021). Wilson is also a businessman. He formed a Delaware corporation in 2012 called Wiltech Energy Group, LLC ("WEG"). *See* Doc. 47-1 at 4 ¶ 15; Doc. 54-1 at 1 ¶ 5. He also served as director and CEO of two other companies, Wiltech Technology, Inc. ("WTI"), and Wiltech Global Technology, Inc. ("WGTI").[2] Doc. 47-1 at 3 ¶ 10; Doc. 54-1 at 3 ¶¶ 16-17. Wilson's invention and the tangled business relationships in which he was involved are at the center of the instant dispute.

In July 2017, the City Council of the Village of Los Lunas ("Village" or "Village City

---

[1] Wilson identifies this system as a "vertical polygon solar energy system." Doc. 54 at 2 ¶ 1.

[2] WTI and WGTI are referred to collectively hereafter as "Plaintiff Companies."

1

Council") voted to approve a proposal to use Wilson's energy system to power its recycling center. Doc. 47 at 2 ¶ 3; Doc. 47-1 at 2 ¶ 4; Doc. 54 at 2-3 ¶¶ 4-5. Under the initial proposal, WTI would install and operate the energy system for two years whereafter the Village would have the opportunity to purchase the unit. Doc. 47-1 at 2-3 ¶ 4. The Village ultimately opted to buy the energy system outright and executed that purchase in 2019. *Id.* at 3 ¶ 5. Whether this purchase was made as part of the initial 2017 agreement with the Village or pursuant to a later, separate 2019 agreement is unclear. *See* Section II, *infra*. Further muddying the issue is that the parties disagree on funding sources and which company—WTI or WEG—ran the project. *Compare* Doc. 47-1 at 3 ¶ 6 (WTI and WGTI secured funding)*, with* Doc. 54-1 at 4 ¶ 18 (Wilson transferred $89,000 to WGTI to finance the solar energy system); *compare* Doc. 47-1 at 3 ¶ 6 (WTI purchased system components and other costs of system installation)*, with* Doc. 54-1 at 4 ¶ 20 (WTI and WGTI "did not play any role whatsoever in establishing a relationship with Los Lunas, or the design, building, and [installation] of the Energy System").

In March of 2020, Wilson formed a new limited liability company in New Mexico named Wiltech Energy, LLC ("WEL"), to conduct business with the Village. Doc. 54-1 at 4 ¶ 23. He claims that this new company was necessary to move the project forward because WEG is a Delaware company and the Village "could only do business with a New Mexico entity." *Id.* at 3-4 ¶¶ 12, 22-23. According to Plaintiff Companies, Wilson wrongfully began promoting WEL as "the builder and creator of the Los Lunas solar power system." Doc. 47-1 at 3 ¶¶ 7, 9. Thereafter, in his capacity as WEL's CEO, Wilson issued an invoice requesting payment from the Village. *See* Doc. 34 at 30. The Village was uncertain as to which entity was the proper payee and so it held the funds until the rightful recipient could be identified. Doc. 15. After it was brought as a defendant in the present suit, the Village deposited the agreed-upon sum of $89,265.85 into the

court registry to be disbursed in accordance with Court instruction. Docs. 17, 24.

## I.     Procedural Background

Plaintiff Companies filed suit against Wilson and WEL (as well as the Village, which was subsequently dismissed) alleging various wrongs and seeking injunctive relief. *See generally* Doc. 1. On August 31, 2021, Plaintiff Companies filed a motion for partial summary judgment. Doc. 47. That motion requested payment of the disputed funds to Plaintiff Companies on the basis that "there is no legal or factual dispute as to the identity of the party to whom the funds deposited with the Court are owed[.]" *Id.* at 7. Wilson's response to that motion did not detail how he believed the funds should be distributed. He stated only that "all vendors who provided labor, materials, and services" toward the solar energy system project were entitled to a pro rata portion of the disputed funds. Doc. 54 at 2. Chief Magistrate Judge Carmen E. Garza issued her Proposed Findings and Recommended Disposition ("PFRD") addressing the issue. Doc. 61. She noted that the relevant facts pointed to different conclusions regarding whether Wilson acted on behalf of WEL or WTI when presenting, negotiating, and contracting with the Village. *Id.* at 20-21. Additionally, the dearth of evidence regarding the formulation of the purchase agreement—specifically, whether it was part of the 2017 agreement or a new agreement in 2019—left unclear whether Plaintiff Companies were involved in the purchase of the solar energy system. *Id.* at 22. Judge Garza therefore recommended denying the motion for partial summary judgment. *Id.* at 2, 22, 28.

On January 11, 2022, Judge Margaret Strickland, the district judge presiding over the case at the time, followed Judge Garza's recommendations regarding the summary judgment issue and denied the partial summary judgment motion. Doc. 65 at 4-7.

On November 17, 2022, Plaintiff Companies filed a second motion for partial summary

judgment, this time seeking to resolve "the question of which party is the correct entity that entered into a contract with the Village of Los Lunas for the sale of the solar energy system, and consequently, which party is the correct party to be paid out of the funds deposited with the Court[.]" Doc. 84 at 1.

## II.    Additional Factual Background

The parties have provided additional evidence not proffered in prior filings. To begin with, Lawrence Cooper's[3] updated affidavit clarifies that the Village's initial 2017 offer to have WTI install and operate the solar energy system was scrapped. Doc. 84-1 at 1-2 ¶ 4. Instead, in 2019, the Village decided to purchase the solar energy system outright under a separate contract. *Id.* at 2 ¶¶ 4-5. This affidavit also expands upon the discussion of funding: Cooper states that all funding for the project was secured by Plaintiff Companies and these entities were the ones to execute investment agreements with outside parties; Wilson and WEG, according to Cooper, were not involved in securing funding. *Id.* at 3-4 ¶¶ 16-19.

Wilson's updated affidavit still tells the story differently. He repeats the contents of his earlier affidavit and further emphasizes that he was the sole owner of the patents and trademarks associated with the solar energy system. Doc. 87-1 at 2 ¶ 6. Wilson also claims that he "provided all related funding" for the Village's solar energy system and that "[a]ll invoices [from] third party vendors related to the project were made payable by [him] or listed [him] as the contact person of the payor." *Id.* at 4 ¶ 18. The funding included "$89,000.00 of [Wilson's] own money." *Id.* at 6 ¶ 29.

---

[3] Cooper is general counsel and a member of the board of directors for Plaintiff Companies. Doc. 84-1 at 1 ¶ 1.

4

The other attachments are myriad but include meeting minutes from the Village indicating that the presentation about the solar energy system will be from WTI, Docs. 84-2, 84-3;[4] e-mails from Wilson with a signature identifying him as CEO of WTI, Docs. 84-4, 84-6, 84-8, 84-11; *see also* Doc. 84-12 (affiliating Wilson with WTI but not specifically as CEO); WTGI's agreement obtaining investment funding for the Village's solar energy system, Doc. 84-5; the Village's agreement to purchase the system outright from "Weltech," Docs. 84-7, 84-9; documentation of WEL's organization in New Mexico on March 9, 2020, Doc. 84-14; and, confusingly, a WEL invoice for the purchase of the solar energy system with an introductory letter on WEG letterhead. Doc. 84-15.

## ANALYSIS

Summary judgment is a drastic remedy, and it should be not granted improvidently. *McGill v. Am. Land & Expl. Co.*, 776 F.2d 923, 926 n.5 (10th Cir. 1985) ("We reiterate the teachings of our past cases that summary judgment is a drastic remedy that should be granted only with caution."). To that end, when assessing a summary judgment motion, the Court examines the factual record and draws all reasonable inferences in the light most favorable to the nonmoving party. *EFLO Energy v. Devon Energy Corp.*, 66 F.4th 775, 787 (10th Cir. 2023). "Where different ultimate inferences may properly be drawn, the case is not one for a summary judgment." *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000). It is only when "there is no genuine dispute as to any material fact [that] the movant is entitled to judgment as a matter of law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quotation omitted).

---

[4] These documents refer to a presentation by WTI before, according to other documentation, WTI was formed at all. *Compare* Docs. 84-2, 84-3 (referring to a presentation by WTI on June 13, 2017), *with* Doc. 34 at 3, 7 *and* Doc. 87-1 at 4-5 (WTI and WGTI formed in August and September 2017).

Applying these principles to the instant matter, the Court finds that a reasonable jury could return a verdict in Defendants' favor and thus Plaintiff Companies are not entitled to summary judgment. The Court comes to this conclusion largely because the body of evidence in this case is wildly contradictory; for every disputed issue, credible evidence allows for multiple conclusions.

First, it is disputed whether Wilson was acting on behalf of WEG or WTI when negotiating and contracting with the Village. *Compare* Doc. 87 at 4-5 ¶ 6, *with* Doc. 84 at 2-3 ¶ 3. Plaintiff Companies have brought forth credible evidence, in the form of the Village City Council agenda and meeting minutes, that Wilson operated on WTI's behalf when he pitched his solar energy system to the Village. Doc. 84-2; Doc. 84-3. Yet Wilson, too, has provided evidence—including invoices and news materials—that he acted on his own behalf or that of WEG. *See* Doc. 34 at 18-20 (invoices by WEG for work on the project); *id.* at 23 (news article quote by Village public works director referring to WEG in the context of the project). Additionally, and somewhat curiously, Wilson has also provided evidence that Plaintiff Companies did not exist when he made his initial presentation to the Village. *See* Doc. 34 at 3, 7.

Second, the parties to the agreement cannot be identified with any certainty. Wilson claims the contract, including an option for the Village to purchase the solar energy system outright, was made before WTI and WGTI were formed, Doc. 87 at 8-9 ¶ 24, while Plaintiff Companies respond that the purchase agreement was made separately thereafter. Doc. 84 at 2-3 ¶ 3. The parties' submissions do not resolve the question. The July 2017 Village City Council meeting minutes during which the Village City Council agreed to move forward with the solar project refer to WTI, Doc. 84-3 at 3, but WTI's certificate of incorporation suggests that the company had not yet been

formed.[5] Doc. 34 at 3 (identifying WTI's date of incorporation as August 25, 2017).

Third, the evidence is inconclusive regarding which entities funded the project. Both parties put forward documentation suggesting that they were involved in gathering investment funds for the project. *See* Doc. 84-5 (WTI documentation); Doc. 87-1 at 4-6 ¶¶ 20, 24, 29 (Wilson's affidavit indicating that he obtained outside funding and also contributed $89,000 of his own money to WGTI for the project). And Wilson's response further claims that he obtained investment funding for the project himself. Doc. 87 at 6 ¶ 12. By contrast, Plaintiff Companies assert they secured all necessary monies for the project themselves; they include affidavits and correspondence to support their position. Doc. 84 at 3 ¶ 5; Doc. 84-1 at 2 ¶ 6; Doc. 84-5. The question cannot be resolved at this stage of the litigation.

Fourth, and finally, there is conflicting evidence regarding who built the solar energy system and whether Wilson was acting on behalf of Plaintiff Companies during the pendency of the project. Wilson claims he installed and operated the solar energy system with the assistance of various third-party contractors, Doc. 87 at 10-11 ¶ 32, while Plaintiff Companies claim that Wilson was always acting on their behalf. Doc. 84 at 3 ¶ 4. Plaintiff Companies present email strings that ostensibly support their position, Docs. 84-4, 84-6, 84-8, 84-11, 84-12, but not all correspondence bears the Plaintiff Companies' signature block. *See* Doc. 33 at 12 (email correspondence to Wilson regarding solar energy system construction without reference to any company). Again, neither party has presented determinative evidence allowing for resolution of the matter.

## CONCLUSION

Given the preceding, and when viewed in the light most favorable to Wilson, the evidence

---

[5] The 2019 purchase agreement refers to "Weltech," which is not the correct name of any relevant entity. Doc. 84-7; Doc. 84-9.

is sufficient for a rational jury to rule in his favor. Accordingly, Plaintiff Companies' Second Motion for Partial Summary Judgment, filed November 17, 2022, is hereby denied. Doc. 84.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA