**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

WILTECH TECHNOLOGY, INC.; *and*
WILTECH GLOBAL TECHNOLOGY, INC.,

       Plaintiffs,

v.                                         No. 1:20-cv-00975-KK-JHR

OSWALD WILSON; *and* WILTECH
ENERGY, LLC,

       Defendants.

## <u>MEMORANDUM ORDER AND OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS</u>

THIS MATTER is before the Court on Plaintiffs' Second Motion to Compel Production of Documents and Motion for Sanctions, [Doc. 96]. Having considered the parties' filings and the relevant law, the Court partly grants and partly denies Plaintiffs' request that Defendant Oswald Wilson be compelled to produce documents, partly grants Plaintiffs' request for payment of expenses, and recommends denial of Plaintiffs' request for summary judgment.

## I.   <u>BACKGROUND AND PROCEDURAL HISTORY</u>

This case began in 2020 when Plaintiffs Wiltech Technology, Inc., and Wiltech Global Technology, Inc. ("Wiltech Global") sued Defendants Oswald Wilson and Wiltech Energy, LLC on several federal- and state-law causes of action. *See* [Doc. 1]. Wiltech Technology and Wiltech Global are corporations, of which Wilson was once Chief Executive Officer, created to finance, develop, and install technology which generates solar energy. *Id.* at 3. Plaintiffs allege that they had an agreement with the Village of Los Lunas, New Mexico, to develop, install, and sell a solar energy system for the Village, but that Wilson abused his position as the main

facilitator of the project to take money from the Plaintiff corporations, cut Plaintiffs out of the deal, and then finish the project through a newly formed company. *See id.* at 3–7.

Discovery has focused largely on when and how various transactions happened. Plaintiffs asked Wilson to produce documents related to the formation of Wiltech Energy, LLC, and documents related to payment, expenditure, or receipt of funds or monies related to the Los Lunas project. *See* [Doc. 83-1, ¶¶ 12, 21–25]. Wilson produced over two-hundred and fifty pages of documents but, allegedly, did not organize them nor explain which documents responded to which requests. [Doc. 83, pp. 1–2]; [Doc. 85, pp. 1–2]. In his subsequent deposition, Wilson stated that various documents, including invoices and receipts for equipment and labor for the Los Lunas project, existed and were not produced but that he would produce them after the deposition. *See* [Doc. 83, pp. 2–5]. Wilson did not produce additional documents before the deadline for discovery motions, so Plaintiffs filed their First Motion to Compel. *See* [Doc. 83]. In November 2022, after the deadline, Wilson produced a new batch of documents in response to all but one of the items sought in the First Motion. *See* [Doc. 85, pp. 3–6]. Wilson produced a third set of documents in December 2022. *See* [Doc. 97, p. 2]. Plaintiffs did not address whether the November or December 2022 productions were responsive and acknowledged only that the November 2022 production was untimely and disorganized. [Doc. 86, p. 3].

The Court granted the First Motion and held that "Defendants shall produce any remaining responsive information as required under Rules 26 and 34," but did not comment on how much, if any, of the November or December 2022 productions satisfied those requirements. [Doc. 91, pp. 4–5]; *Wiltech Tech. v. Wilson*, 2023 WL 1966418 at *2 (D.N.M. Feb. 13, 2023). Additionally, the Court noted that a successful movant on a motion to compel is owed all

reasonable expenses incurred in making the motion from the party whose conduct necessitated it, but only "after having an opportunity to be heard[.]"  [Doc. 91, p. 4]; *Wiltech Tech.*, 2023 WL 1966418 at *2 (citing Fed. R. Civ. P. 37(a)(5)(B)).  Plaintiffs did not ask for expenses to be paid, so Defendants did not have an opportunity to be heard on the issue and expenses were not awarded.  [Doc. 91, pp. 4–5]; *Wiltech Tech.*, 2023 WL 1966418 at *2.

In June 2023, Plaintiffs filed their Second Motion to Compel, arguing that Wilson still had not produced the requested documents.  [Doc. 96, pp. 1–3].  They ask that the Court again compel document production, order payment of expenses incurred from the First and Second Motions and, as a sanction, grant summary judgment in their favor.  *Id.* at 3–4.  Wilson opposes, first by arguing that Plaintiffs did not make a good-faith effort to resolve this matter before filing the Second Motion, [Doc. 97, pp. 3–4], exemplified by Plaintiffs' ignoring Wilson's November and December 2022 productions in their Second Motion.  *See* [Doc. 96, pp. 1–3]; [Doc. 97, p. 4].  Second, Wilson cites specific documents produced to Plaintiffs to argue that, except for one document he cannot find, Plaintiffs have everything they have asked for and filed the Second Motion solely to harass him.  *See* [Doc. 97, pp. 4–7].  Plaintiffs rebut both points by arguing that the specific documents Wilson cites are not actually responsive to their requests.  *See* [Doc. 98, pp. 5–15].  The matter is now fully briefed and ripe for decision.

## II.   <u>RELEVANT LAW</u>

### a.  *Motions to Compel*

Generally, parties to litigation must respond to each other's requests for production by either producing, copying, or permitting inspection of the items requested or by timely objecting to requests.  *See* Fed. R. Civ. P. 34(b).  Responses must be made within thirty days of the request unless the parties stipulate to a different amount of time. Fed. R. Civ. P. 34(b)(2)(A).  Failure to

produce or permit inspection of requested items is grounds for a motion to compel production. Fed. R. Civ. P. 37(a)(3)(B)(iv). When courts grant such motions, reasonable expenses must be assessed against the party who made the motion necessary, or its attorney, unless (i) the movant did not make a good-faith effort to obtain the discovery without court action, (ii) the opposing party's objection or non-production was substantially justified, or (iii) other circumstances make the award unjust. Fed. R. Civ. P. 37(a)(5)(A). Failure to comply with an order compelling production is grounds for additional sanctions, including default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(vi). The disobedient party, or its attorney, must also pay reasonable expenses incurred because of the failure to comply unless it was substantially justified or an award would be unjust. Fed. R. Civ. P. 37(b)(2)(C). District courts have broad discretion to decide whether to grant motions to compel and magistrate judges have broad discretion to impose discovery sanctions based on them. *Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017); *Hutchinson v. Pfeil*, 208 F.3d 1180, 1184 n.7 (10th Cir. 2000).

      b. *Dispositive Matters*

Although the Rules permit default judgment as a discovery sanction, federal magistrate judges have limited power to grant it. With some exceptions, magistrate judges can "hear and determine any pretrial matter pending before the court," including discovery matters. *See* 28 U.S.C. § 636(b)(1)(A). One exception is that a magistrate judge cannot decide motions for summary judgment unless the parties consent to his presiding. *Id.* at §§ 636(b)(1)(A), (c)(1). Instead, magistrate judges must submit proposed findings and a recommended disposition on such motions. *Id.* at § 636(b)(1)(B). The parties may then object to the magistrate judge's recommendation within fourteen days of its entry and the presiding district judge must review them *de novo*. *Id.* at § 636(b)(1).

The undersigned is a United States Magistrate Judge to whom discovery matters have been referred in this case. Consistent with those duties, this Order resolves the issues of what documents must be produced and what expenses must be paid. However, consistent with the limits on magistrate judges' power to grant or deny summary judgment, the undersigned merely recommends how the Court ought to rule on Plaintiffs' request for summary judgment. No later than **fourteen (14) days** from service of this Order, the parties can object to the recommendation below that summary judgment be denied and the presiding district judge will review the recommendation *de novo*.

## III.   DISCUSSION

### a.   *Good-Faith Attempts to Resolve the Dispute*

The Court will not deny the Second Motion entirely for a failure to attempt in good faith to resolve this matter without court action. Plaintiffs attempted in good faith to obtain the documents discussed below when they contacted Wilson's attorney several times before moving to compel on the last day they were permitted to do so. *See* [Docs. 83-5, 83-6]. The Court held as much when it granted the First Motion. [Doc. 91, p. 4]; *Wiltech Tech.*, 2023 WL 1966418 at *2. The Second Motion now seeks to enforce an order with which Wilson has not fully complied. Although it might have been prudent for Plaintiffs to look more carefully at the November and December 2022 productions, Wilson's partial noncompliance shows that a second motion likely would have been necessary to obtain full compliance regardless. The Court will thus consider which documents still need to be produced.

### b.   *Some Documents were Not Produced*

Plaintiffs' Second Motion claims that documents responsive to the First Motion were not produced and seeks those documents again. [Doc. 96, p. 3]. Some of the documents have been

produced while others have not.  As detailed below, Wilson will not be compelled to produce documents which Plaintiffs already have.  For others, Wilson will be compelled (1) to certify to the Court and to Plaintiffs whether the documents in question exist in his possession, and (2) if they do, to produce those documents to Plaintiffs no later than **February 21, 2024**.

        i.  January 2019 Email was Produced

        The first document at issue in Plaintiffs' First Motion was a "January 2019 email and letter from Oswald Wilson."  [Doc. 83, p. 2].  According to Plaintiffs, Wilson confirmed during his deposition that he sent a letter in January 2019 "to Plaintiffs regarding the agreement for the construction of the solar energy system and Michael Jaramillo at the Village of Los Lunas" but that this letter was not produced.  *Id.* at 2–3 (citing [Doc. 83-7], *Oswald Wilson Dep.*, 90:4–95:25 (Oct. 11, 2022)).  Wilson claims the responsive document was produced in both a letter to the Court, [Doc. 34, p. 27], and in the December 2022 production, Bates-stamped WIL00312.  [Doc. 97, p. 4].

        Wilson is correct.  In his deposition, Wilson and the questioning lawyer talked about written correspondence between Wilson and Michael Jaramillo, a representative for the Village of Los Lunas.  *See* [Doc. 83-7], *Wilson Dep.*, 89:15–91:24.  Wilson read aloud an email in which he told Jaramillo "I am requesting an updated letter in reference to the letter you sent January 2019 regarding the project.  Please include the cost of the project in the letter."  *Id.* at 90:22–91:3.  Wilson then described the January 2019 letter he was talking about and stated it was sent to him from Jaramillo, addressed project delays, and discussed how the Village would pay for the project.  *Id.* at 91:8–24.  This description matches the document Wilson claims is responsive to this request.  The document he cites is an email from Jaramillo sent in January 2019 in which Jaramillo described the slow progress of the Los Lunas project and stated that the Village

6

"welcome[d] the discount offered in a prior email" and "want[ed] a price to purchase the remaining system out right [*sic*]."  [Doc. 34, p. 27]; [Doc. 98-2], WIL00312.  This is consistent with what Wilson described in his deposition and promised to produce, so the Court finds Wilson satisfied this request.

Plaintiffs' arguments to the contrary are unconvincing.  First, Plaintiffs mischaracterize the document Wilson described in his deposition as a letter written by Wilson and addressed to Plaintiffs.  *See* [Doc. 98, pp. 14–15].  Wilson was clear that the January 2019 letter he was talking about was either an email or a letter sent *to him*, not a letter *from him* to someone else.  *See* [Doc. 83-7], *Wilson Dep.*, 91:4–24.  Second, Plaintiffs make speculative arguments that it would be strange or unnecessary for Wilson to write another email in August asking for a follow-up to the January email from Jaramillo.  [Doc. 98, pp. 14–15].  Though eight months is a long time to wait to send a follow-up email, it is not implausible enough for the Court to order Wilson to produce more email correspondence from January 2019.  The document Wilson produced is consistent with the one he promised to produce in his deposition, so this request is satisfied.

### ii.  New Mexico Business License was Not Produced

The second document at issue in Plaintiffs' First Motion was a "New Mexico business license for Wiltech Energy, LLC."  [Doc. 83, p. 3].  Wilson represented in his deposition that Wiltech Energy, LLC has a business license to operate in Los Lunas, New Mexico and promised to produce that license.  *See* [Doc. 83-7], *Wilson Dep.*, 139:11–22, 204:21–205:9.  Wilson claims this was produced in the November 2022 production at WIL00259.  [Doc. 97, p. 4].  This is not the case.  The document at WIL00259 is a business registration certificate issued by the Village of Los Lunas for "Wiltech Energy."  [Doc. 98-1], WIL00259.  The certificate states that "[r]egistration with the Village of Los Lunas and payment of the business registration fee is not a

license to conduct business within the Village[.]"  *Id.*  Wilson will thus be ordered to certify whether a business license for Wiltech Energy, LLC exists and, if it does, to produce it.

### iii.   Email from Wilson about Fabrication Costs was Not Produced

The fourth document at issue in Plaintiffs' First Motion was an "[e]mail from Oswald Wilson documenting costs for the fabrication of the solar energy system."  [Doc. 83, p. 3]. During a discussion in his deposition about parts purchased for the Los Lunas project, Wilson stated that he sent an email directing Lawrence Cooper to "contact directly the inverter store" about "items that must be purchased and sent to the transfer station" in New Mexico.  [Doc. 83-7], *Wilson Dep.*, 159:22–160:6.  Wilson then stated he had not produced that email and promised to do so.  *Id.* at 160:7–15.  Wilson says that Plaintiffs' request during the deposition was for "documents specifically relating to the Inverter Store" and that those documents were produced in the November 2022 production at WIL00275–278.  [Doc. 97, p. 5].  Although the documents at WIL00275–278 are, in fact, documents from an online retailer called The Inverter Store, they are not an email addressed to Lawrence Cooper about contacting The Inverter Store.  *See* [Doc. 98-1], WIL00275–278.  Wilson will thus be ordered to certify whether this email exists and, if it does, to produce it.

### iv.   2017 Email from Wilson to Belton was Not Produced

The eighth document at issue in Plaintiffs' First Motion was an "[e]mail from Oswald Wilson to Mr. Belton in 2017 relating to a deposit into Mr. Wilson's account of $89,000 to fund the construction of the solar energy system."  [Doc. 83, p. 4].  During his deposition, Wilson described having contact with a man named Belton who, Wilson said, sent him $89,000 by wire transfer to help fund the Los Lunas project.  *See* [Doc. 83-7], *Wilson Dep.*, 167:22–171:16. Wilson then said that he sent an email to Belton "with a copy of the funds" and promised to

produce this email. *Id.* at 171:17–25. Wilson now says that he has not found the email he described and will produce it "if and when it is located." [Doc. 97, p. 7]. Wilson will thus be ordered to certify whether this email exists and, if it does, to produce it.

> v. <u>Cost-Substantiating Invoices were Produced; Expense-Substantiating Documents and Receipts were Not Produced</u>

The remaining documents at issue in Plaintiffs' First Motion were four categories of "[d]ocuments substantiating amounts claimed as costs" for specified parts, services, and labor "associated with the solar energy system" and a broad category of "receipts substantiating all expenditures claimed by Oswald Wilson in the construction of the solar energy system." *See* [Doc. 83, pp. 3–5]. Wilson cites numerous documents which he says are responsive to those requests. [Doc. 97, pp. 5–7]. Many of the cited documents are not responsive, but the invoices are, at least partly. The Court will thus order Wilson to certify whether separate receipts also exist and, if they do, to produce them.

> A. *Invoices are Invoices*

In his deposition, Wilson described and promised to produce four sets of documents to substantiate costs relevant to the Los Lunas project. These were: documents from Sheet Metal Products, Inc., totaling costs of $29,166.32 for work on the Los Lunas project, [Doc. 83-7], *Wilson Dep.*, 152:8–153:5; documents from LTBL, totaling costs of $6,494.42 for work on the project, *id.* at 161:23–162:20; documents from S & P Management Company totaling costs of $3,812.82 for a property survey, *id.* at 163:1–24; and a document from Michael Pacheco reflecting $250 owed for engineering drawings, *id.* at 163:25–164:15.

Wilson produced four sets of documents which match his descriptions. An invoice is "an itemized list of goods shipped usu[ally] *specifying the price* and the terms of sale[.]" Merriam-Webster's Collegiate Dictionary (11th ed.), *invoice (n)*, 659 (emphasis added). The November

2022 production included WIL00253–257, WIL00296–299, WIL00287–289, and WIL00286.
*See* [Doc. 98-1]  All of the documents in those Bates ranges are conspicuously marked
"INVOICE," are written under the respective letterheads of the companies or people discussed in
Wilson's deposition, and state amounts owed for goods or services totaling the same amounts
quoted in Wilson's deposition.  *See* [Doc. 98-1], WIL00253–257 (Sheet Metal Products),
WIL00296–299 (LTBL Electric), WIL00287–289 (S & P Management), WIL00286 (Michael
Pacheco).  Plaintiffs thus have copies of the "documents substantiating costs" for which they
asked.

Plaintiffs' counterarguments are not persuasive.  Plaintiffs claim that, because Wilson has
referred to these documents elsewhere as receipts or as proof of payment, rather than proof of
costs, the documents must be neither invoices nor receipts.  *See* [Doc. 98, pp. 7–14].  But the
documents are clearly invoices which, at their very least, substantiate costs.  Each page
prominently features the word "INVOICE."  Everything about them, down to the total money
owed and the goods or services listed, matches Wilson's descriptions of such invoices.  The fact
that he conflated these documents with receipts does not change what they plainly are.  Wilson
has produced the invoices he promised, and he will not be ordered to do so again.

### B. *Invoices are Not Necessarily Receipts*

Few corresponding receipts, however, have been produced.  A receipt is "a writing
acknowledging the receiving of goods or money."  Merriam-Webster's Collegiate Dictionary
(11th ed.), *receipt (n)*, 1038.  Some of the documents from the November and December 2022
productions appear to be receipts.  *See, e.g.,* [Doc. 98-1], WIL00265–266.  Wilson suggests that
many of the invoices discussed above are also "receipts."  *See* [Doc. 97, p. 7] (citing WIL00258,
WIL00260–263, and WIL00286–301).  But invoices and receipts are often separate documents,

10

one signifying an amount owed and the other signifying an expense paid.  Both the obligations and the payments are relevant to this litigation and the Court ordered Wilson to produce proof of both when it granted the First Motion.  [Doc. 91, pp. 4–5]; *Wiltech Tech.*, 2023 WL 1966418 at *2.  The Court thus will order Wilson to certify whether separate receipts exist, apart from the invoices he produced, which substantiate the expenses paid associated with the Los Lunas project, and if they do, to produce them.

        c.  *Some Expenses Must be Paid*

Wilson must pay Plaintiffs' reasonable expenses incurred in making the First Motion to Compel.  The First Motion was granted, and Plaintiffs' request for their expenses to be paid in the Second Motion gave Wilson an opportunity to be heard on that issue.  Wilson's arguments based on failure to resolve the Motion without court action and for substantial justification have been rejected, and no other circumstances appear to make the award unjust.  Reasonable expenses incurred in making the First Motion will thus be awarded.

Wilson does not, however, need to pay all reasonable expenses incurred in making the Second Motion.  As discussed above, Wilson did not fully comply with the Court's discovery order, so at least some expenses incurred in making the Second Motion must be paid.  *See* Fed. R. Civ. P. 37(b)(2)(C).  But a Second Motion was not necessary to obtain almost half the documents at issue because Wilson already produced them.  Wilson thus shall not be ordered to pay any expenses associated with the parts of Second Motion focused on the documents at issue which he produced.

Plaintiffs shall submit to the Court an affidavit which (1) itemizes the reasonable expenses, including attorney's fees, they incurred filing the First Motion and (2) itemizes the reasonable expenses incurred in filing the Second Motion, excluding those parts of the Second

Motion and the reply in support which discuss the documents Wilson is not being re-compelled to produce. Plaintiffs shall submit this affidavit no later than **February 21, 2024**; Wilson may respond to it with objections within **fourteen (14) days** of being served the affidavit; and Plaintiffs may reply in support within **seven (7) days** of being served Wilson's objections.

      d. *Summary Judgment Should Not be Granted*

I, the undersigned United States Magistrate Judge, recommend that the Court deny summary judgment as a discovery sanction. Rule 37(b)(2) does not expressly permit "summary judgment" as a sanction for failure to comply with discovery orders, but a court can enter a default judgment establishing personal liability. *See* Fed. R. Civ. P. 37(b)(2)(A)(vi); *Klein-Becker USA, LLC v. Engelbert*, 711 F.3d 1153, 1161 (10th Cir. 2013). Whether to impose discovery sanctions, including default judgment, is within the discretion of the district court. *See Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015). Before entering default judgment as a sanction, courts must consider (1) how much the opposing party was prejudiced by the litigant's conduct; (2) how much the litigant interfered with the judicial process; (3) the culpability of the litigant; (4) whether the litigant was warned that judgment may be entered as a sanction; and (5) the efficacy of lesser sanctions. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992); *Klein-Becker USA, LLC*, 711 F.3d at 1159 (applying *Ehrenhaus* in the default judgment context). A sanction as harsh as default judgment is appropriate only when the aggravating factors outweigh the judiciary's strong presumption in favor of adjudication on the merits. *Ehrenhaus*, 965 F.2d at 921.

The aggravating factors here are not great enough to excuse Plaintiffs from proving their case. On the first and second factors, Plaintiffs have not shown great prejudice nor great interference. They received many of the documents they asked for (albeit late) and have not

explained why the documents they did not receive would prevent them from presenting a case. On the third factor, Wilson bears some culpability, but not an extraordinary amount.  He produced many of the promised documents in response to the First Motion and has been forthcoming about his failure to produce documents he says he cannot find.  *See* [Doc. 85, pp. 5–6]; [Doc. 97, p. 7].  Fourth, the Court cannot find any record that Wilson was warned before now that default judgment could be entered against him if he failed to comply with discovery orders. Fifth, it is not clear that lesser sanctions will be ineffective.  Although the Court's prior order to compel production was only somewhat effective, the Court and the parties have yet to see whether forced payment of reasonable expenses will change Wilson's behavior.  Further, Plaintiffs did not seek any of the lesser sanctions offered by Rule 37(b)(2)(A) before requesting judgment.  *See* [Doc. 96, pp. 3–4].  In short, although Wilson's failure to fully comply with the Court's orders was bad, Plaintiffs have not shown that it was egregious enough to justify judgment in their favor.  Neither summary nor default judgment should be entered as a sanction.

IV.   **CONCLUSION**

Based on the discussion above, the Court hereby **ORDERS** as follows:

(1) No later than **February 21, 2024**, Defendant Oswald Wilson shall certify, in a filing with the Court, whether the following documents exist in his possession:  (a) a business license for Wiltech Energy, LLC; (b) an email from Oswald Wilson about fabrication costs, as described in Oswald Wilson's October 11, 2022 deposition at 159:22–160:6; (c) an email sent by Oswald Wilson in 2017 to a man named Belton, as described in Oswald Wilson's October 11, 2022 deposition at 167:22–171:25; and (d) receipts, apart from invoices, substantiating all expenses for the Los Lunas project.

(2) As to all documents Defendant Oswald Wilson certifies to exist in his possession based on this Order, Defendant Oswald Wilson shall produce them to Plaintiffs the same day he certifies to their existence in his possession.

(3) Defendant Oswald Wilson shall pay the reasonable costs incurred by Plaintiffs in filing the First and Second Motions according to the parameters stated above.  Plaintiffs shall submit an affidavit itemizing their reasonable costs within those parameters no later than **February 21, 2024**.  Wilson may file objections no later than **fourteen (14) days** after service of Plaintiffs' affidavit, and Plaintiffs may file a reply in support no later than **seven (7) days** after service of Wilson's objections.

The Court further **RECOMMENDS** that summary judgment be denied as a discovery sanction.

Hon. Jerry H. Ritter
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of the Proposed Findings and Recommended Disposition they may file written objections **on the issue of summary judgment** with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition on the issue of summary judgment. **If no objections are filed, no appellate review will be allowed.**